## JOSEPH HOLLON v. HENRY HOPKINS.

1. CONVICT; *Escape before Imprisonment in Penitentiary; Recapture and Imprisonment.* Where a defendant in a criminal prosecution, who is charged with perjury, is convicted and sentenced to imprisonment in the penitentiary "for the period of three years from the 19th day of September, A. D. 1874," and on the next day after his sentence, and before he is placed in the penitentiary, escapes from the custody of the officer then having him in charge and becomes a fugitive from justice, and is not rearrested until May 28, 1878, *held,* that on being rearrested, he may be taken to the penitentiary without further proceedings, and may be required to serve in the penitentiary for the full period for which he was originally sentenced.

2. TIME, *Not an Essential Element of the Sentence.* The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and strictly speaking is not a part of the sentence at all. The essential portion of a sentence is the *punishment,* including the *kind* of punishment and the *amount* thereof, without reference to the time when it shall be inflicted. The sentence, with reference to the kind of punishment and the amount thereof, should as a rule be strictly executed. But the order of the court with reference to the time when the sentence shall be executed, is not so material. In no case will a term of imprisonment be deemed to have commenced prior to actual imprisonment, unless the actual imprisonment has been prevented by some cause other than the fault or wrong of the convict. "Expiration of time without imprisonment is in no sense an execution of the sentence."

3. CONVICT; *Escape and Recapture; Practice.* Although it might be a safer practice, where the convict escapes and remains absent until the whole of the time as fixed by the court for his imprisonment or for the execution of his sentence has elapsed, to take such convict again before the court that sentenced him, so that the court might resentence him, or in other words, "order the execution of its former judgment," yet such practice is not necessary. The records of the court show that the convict was sentenced, and the records of the penitentiary show that the sentence has not been executed; and nothing therefore remains to be shown, except the identity of the prisoner, and the reasons for the failure to imprison him at the proper time, and these may be shown as well on proceedings in *habeas corpus,* as on proceedings in the court where the sentence was originally pronounced.

### Original Proceedings in Habeas Corpus.

THE petition was filed in this court on the 13th of March, 1879, on behalf of *Joseph Hollon,* for a writ of *habeas corpus.* The petition set forth the following facts:

"That he is now a prisoner in the custody of Henry Hopkins, warden of the penitentiary at Leavenworth, Kansas, and is confined in said penitentiary; that said imprisonment purports to be by virtue of and in compliance with a judgment of conviction of perjury had in the district court of Marion county, Kansas, on or about the 19th day of September, 1874, said judgment being in words and figures as follows, to wit: 'It is considered and adjudged by the court, and sentence given, that the said Joseph Hollon be imprisoned at hard labor in the penitentiary of the state of Kansas, for the period of three years from the 19th day of September, 1874, for his said crime of perjury, and that the sheriff of Marion county take and safely convey the said Joseph Hollon to the penitentiary of the state of Kansas, at the city of Leavenworth, and there deliver the said Joseph Hollon into the custody of the warden thereof;' that the period of three years (the term for which the said Joseph Hollon was sentenced to hard labor in the penitentiary) has long since expired; that the said Joseph Hollon has never escaped from the penitentiary of the state; and that he is now imprisoned without the authority of law, and is now unlawfully restrained of his liberty by Henry Hopkins. warden of the penitentiary of the state of Kansas."

Upon the foregoing petition a writ of *habeas corpus* was issued by the court and made returnable on the 31st of March, 1879, and the same was served upon the warden aforesaid. To this writ the warden made a return in effect that "he had the body of the said Joseph Hollon before the court;" and for the authority and cause of the restraint of the said Hollon in his custody, the warden set forth in his return to said writ, in substance, that—

"He had the within-named Joseph Hollon in his custody as warden of the penitentiary of the state of Kansas, by virtue and under the authority of an order and judgment of the district court of Marion county, in the state of Kansas, made at the September term, 1874, of said court, whereby the said Joseph Hollon was sentenced to be imprisoned at hard labor in the penitentiary of the state of Kansas for the period of three years from the 19th day of September, 1874, for the crime of perjury, and that the sheriff of said Marion county was therein ordered to take and safely convey the said Joseph Hollon to the penitentiary of the state of Kansas, at the city

of Leavenworth, and there deliver the said Joseph Hollon into the custody of the warden thereof; and that on or about the 26th day of September, 1874, the said Joseph Hollon, while in the lawful custody of the aforesaid sheriff, in said Marion county, and on his way to the penitentiary under and by virtue of the judgment and order aforesaid, did then and there escape from the custody of said sheriff, and that thenceforth the said Hollon became and was a fugitive from justice and kept himself concealed from process of law, until on or about the 27th of May, 1878, when he was recaptured by the said sheriff of Marion county, Kansas; that at no time during the period of three years for which said Hollon was sentenced to be imprisoned in the state penitentiary as aforesaid, was the said Hollon, by reason of his said escape, ever an inmate or prisoner therein under and by virtue of the judgment and order of the district court of Marion county as aforesaid; and that said Joseph Hollon was first received and entered as a prisoner at the penitentiary of the state of Kansas under and by virtue of the aforesaid judgment and order, on the 14th day of March, 1879."

Copies of all the proceedings and of the judgment and order of the district court of Marion county in the aforesaid action of the state against the said Joseph Hollon, along with the affidavit of the sheriff of said county concerning Hollon's escape and recapture, as above stated, were attached to and made a part of the warden's return to the writ. The case was argued and submitted April 1, 1879, and the opinion therein was filed April 25, 1879.

*S. N. Wood*, for petitioner.

*C. Reed*, county attorney, and *Willard Davis*, attorney general, for The State:

There are two theories on which the proposition that the sentence has not expired is based and sustained by authority: 1. That if the petitioner never was in the penitentiary, either in fact or in law, his sentence has not expired; 2. If he had been in the penitentiary and served out only a part of his time, his sentence has not expired. In other words, we hold that the sentence can only be wiped out by actual submission

·of the person of the convict to the actual condition imposed, ·unless he be relieved by the. workings of Providence or the pardoning power.

But the point is made here that the date at which the sentence was to begin was fixed by the court, and that this fact ·of itself relieves this petitioner because the record shows that the three years during which he was to be imprisoned have in fact expired. Such is not the law.· It was not necessary that the court should have fixed the sentence, and having ·done so, cuts no figure in this case.

The *Clifford Case,* 29 Ind. 106, is a case very similar to this, and sustains us in our view of nearly every point raised 'by counsel for petitioner.

Counsel for petitioner seems to think that because the ·escape or break of custody is made an offense, therefore it wipes out the whole sentence or any part of it remaining ·unserved. Such is not the law. On the various points of law hereinbefore stated, we cite: *Meyers, ex parte,* 44 Mo. 279; ·vol. 3, Whar. Crim. Law, 3416; 2 Bish. Crim. Law, 918; 1 Bish. Crim. Pr. (ed. 1872), § 1209; 1 Bish. Crim. Pr. (ed. 1866), p. 879, § 878; 3 'Sm. & M. 518; *The State v. Cockerham,* 2 Ired. 204.

In 101 Mass. Report, page 219, *Dolan's Case,* the court lays down unequivocally the doctrine that "the sentence of a convict to imprisonment for a term, expressed only by ·designating the length of time, is to be satisfied only by his ·actual imprisonment for that length of time, unless remitted by legal authority; and if a sentence is limited to take effect upon the expiration of a previous. sentence, .its period will not begin to run until the first sentence has so been fully performed or legally discharged. If a prisoner under sentence, ·to be imprisoned for a term expressed only by the length of time, escapes during the term, the period during which he remains at large does not abridge the period of imprisonment which remains for him to suffer before fully performing the ·sentence." See also, *Ex parte Clifford,* 29 Ind. 108.

There is no question but that Hollon was subject to an ar-
41—21 KAS.

rest, and was properly committed upon the old commitment. *Cooper v. Adams*, 2 Blackf. 294; *Commonwealth v. Sheriff*, 1 Grant (Pa.), 187. But counsel for petitioner also claims that §191, Gen. Stat. 1868, p. 358, is so worded that where a party is once convicted, and thereafter makes his escape and is retaken, he is to be tried alone for the escape, and cannot be committed for the old offense. In contradiction of this, we call the attention of the court to the case of *Ex parte Clifford*, 29 Ind. 106, before cited. Upon examination of this case, the court will perceive that with a few immaterial changes of words, § 56 of 2 G. & H., p. 254, (General Statutes of Indiana,) is *precisely* similar to §191, Kas. Gen. Stat. 1868, p. 358. There the court said, in commenting upon this statute, which is in reality ours:

"In this act, the declared purpose is to define a felony and prescribe its punishment. We do not think it was intended to change the common-law rule in regard to the capture of escaped felons, but simply to authorize the additional holding, after the sentence of the law has been fulfilled, not evaded, until opportunity is given for a prosecution for the new offense of the escape."

Finally, the object of a writ of *habeas corpus* is, as the text-writers say, "to set the prisoner free from present illegal restraint." Therefore, "if at the time of the return the defendant shows a legal cause for restraint then imposed, the prisoner will not be then discharged, notwithstanding the original taking may have been without any legal authority." (Hurd on H. C., 251; 18 Penn. St. 37.)

Under the above authority, conceding that the method of placing a person in the penitentiary is a vital question at the outset, how can it be claimed that such method is now a question before the court, when the real question for the court to determine is not, how he got into the penitentiary, but whether upon the return he is now properly there? There can be no question but that the return shows that Hollon was duly convicted upon information filed, and that thereafter, in pursuance of such conviction, he was sentenced to the penitentiary. The only question that now remains for

the court to decide is, whether or not Hollon is, upon the return of the warden, properly confined. The case referred to in Bishop on Crim. Pr., book 1, p.120, is where the prisoner should be identified and resentenced, and is only given as a case where the officer prefers as a personal matter to pursue that course, when it is doubtful whether the time of imprisonment has expired or not. We submit there can be no doubt in a case like this. Not only that, but upon an examination of the authorities the court will perceive that if such course is pursued, it is so done solely for the purpose of identifying the party. Now for the purpose of a decision in this case (as it is now being heard by the court on a demurrer of the petitioner to the return), it is conceded that Hollon is the same person who made his escape and broke custody. Again, in 16 Ind., p. 357, where this procedure is followed, the court says this is the proper method, and cites in support of its position the fact that such procedure is Indiana practice. It is upon this ground alone that such a decision is made. Now, how would it be in a state where the practice has never been settled? Would it (the court) not be justified in following the rule before laid down and cited? (1 Bishop Crim. Pr., p.1209.) It seems there are two methods: one, by taking the prisoner on an old warrant; another, by having the prisoner resentenced. In a case like the one at bar, where the court is not tied down to a fixed method, the ends of justice would be best met by holding Hollon, even if the court should hereafter be compelled to mark out a different course.

In support of the foregoing views, counsel cited: 2 Rich. New Series (S. C.), 4; 13 La. Ann. 297; 27 N. Y. 336; 1 Ld. Raymond, 482; 17 N. H. 545; Phillips (N. C.) 491; 3 Whar. Cr. L., §§ 3402$y$, 3410$y$.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of *habeas corpus*, brought originally in this court by Joseph Hollon against

Henry Hopkins. The defendant makes return to the writ, stating among other facts the following, to wit:

"The said Henry Hopkins is the warden of the penitentiary of the state of Kansas, and holds the said Joseph Hollon in his custody by virtue of a judgment rendered by the district court of Marion county, Kansas. Said judgment was rendered on September 25th, 1874, and by it Hollon was sentenced, on a conviction duly had September 19th, 1874, for perjury, to imprisonment in the penitentiary 'for the period of three years from the 19th day of September, A. D. 1874.' On the next day after said sentence, Hollon escaped from the custody of the officer then having him in charge, and became a fugitive from justice. On May 28th, 1878, he was rearrested in Indiana and brought back to Kansas; and on March 14th, 1879, was for the first time placed in the penitentiary. Since that time he has been in the custody of said Henry Hopkins, warden of the penitentiary as aforesaid."

Hollon excepts to the sufficiency of this return, on the ground that it does not state facts sufficient to authorize said Henry Hopkins to hold him in custody. He claims that the time for which he was sentenced to the penitentiary has expired, and therefore that his present imprisonment in the penitentiary is unlawful. He claims that by mere lapse of time he is absolutely discharged from all further prosecution, imprisonment or punishment for said offense of perjury. He claims that all proceedings prior to the sentence were merged in and exhausted by the sentence, and that the sentence itself has been exhausted by lapse of time. And he further claims that even if said prior proceedings have not been exhausted, still that the sentence has been exhausted, and that he can never be legally imprisoned under that sentence.

We have no statute directly applicable to this case. The following are the statutes referred to, but none of them seem to be applicable: Gen. Stat. of 1868, pages 356, 357, 358, §§179, 180, 181, 182, 191; id., pages 613, 614, §18; Laws of 1869, page 210, §5; Laws of 1876, page 201, §§1, 3. It is not claimed by either party that any one of these statutes is applicable, except possibly said §191.

It seems to us so clear that Hollon might have been re-arrested and imprisoned in the penitentiary under the origi-, nal sentence, at any time prior to September 19, 1877, the time when his sentence apparently expired, that we shall not waste words nor cite authorities to prove the same. Counsel have cited some of the authorities. In such cases, where a serious question of identity arises it may be safer to take the prisoner before the court that originally pronounced the sentence, where the question of identity may be litigated and determined ; and if the prisoner is then shown to be the escaped convict, he may be resentenced. But all of this is unnecessary, except for safety, for the question of identity may always be determined on a writ of *habeas corpus.* If the prisoner is in fact the escaped convict, then his arrest and imprisonment in the penitentiary are lawful without any re-sentence. These remarks have reference to a prisoner who has escaped *prior* to his imprisonment in the penitentiary; for where he escapes afterward, the statute applies and prescribes the practice. (Laws of 1876, p. 201.)

But as Hollon was not rearrested or imprisoned in the penitentiary until after the term for which he was sentenced had apparently expired, was his rearrest and is his imprisonment lawful? We think both were and are lawful. We do not think that the proceedings had prior to the sentence, nor even the sentence itself, so far as its essentials are concerned, were exhausted by lapse of time. The only way of satisfying a judgment judicially, is by fulfilling its requirements. Of course, if Hollon had died or been pardoned, the sentence would be at an end. But as these things have not happened, and as the sentence has not been disturbed by any judicial decision or determination, there is no way of satisfying its requirements or of exhausting its force except service by Hollon of the required time in the penitentiary. It has often happened that a judgment sentencing a person to be executed capitally on some particular day, has not been fulfilled on that day. A reprieve has been granted, an escape effected, some unforeseen event preventing it has occurred, or the officers from some

cause have failed to perform their duty, and the convict has for the time being escaped punishment. But in no case, so far as we are informed, has it been held that the convict was thereby freed from all punishment, or that he could not be executed on some subsequent day. See the following authorities: *Ex parte Nixon*, 2 Rich. N. S. (S. C.), 4, 6, and cases there cited; *Howard, ex parte*, 17 N. H. 545; *State v. Oscar*, 13 La. Ann. 297; *Lowenberg v. The People*, 27 N. Y. 337; *Rex v. Harris*, 1 Ld. Raymond, 482. If a fine should not be paid at the time ordered, it could certainly be afterward collected. The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and strictly speaking is not a part of the sentence at all. See cases above cited, and *State v. Cockerham*, 2 Ired. (N. C.) 204; *Ex parte Isaiah Bell*, Supreme Court of Mississippi, 1879; and *Dolan's Case*, 101 Mass. 219. The essential portion of a sentence is the *punishment*, including the *kind* of punishment and the *amount* thereof, without reference to the time when it is to be inflicted. The sentence with reference to the kind of punishment and the amount thereof, should as a rule be strictly executed. But the order of the court with reference to the time when the sentence shall be executed is not so material. The time when a sentence is to be executed is usually fixed by an order of the court; but it is not always necessary, as will be seen from the authorities, that it should be thus fixed. Where the punishment ordered is imprisonment in the penitentiary, and where the time for the imprisonment to commence is fixed by the court, the imprisonment will usually be deemed to have commenced at the time ordered by the court, unless the convict by his own wrong has prevented it; and where the time for the commencement of the imprisonment has not been fixed by the court, the imprisonment will usually be deemed to have commenced on the day of the sentence (*Ex parte Meyers*, 44 Mo. 280), unless the convict by his own wrong has prevented it. But in no case will the term of imprisonment be deemed to have commenced prior to actual imprisonment,

unless the actual imprisonment has been prevented by some cause other than the fault or wrong of the convict. As said in *Dolan's Case* (101 Mass. 223), "Expiration of time without imprisonment is in no sense an execution of sentence."

The two cases nearest applicable to this case are those of *Ex parte Clifford*, 29 Ind. 106, and said *Dolan's Case.* In the former case it was held:

"Where a prisoner escapes after conviction, and is not retaken until after the expiration of the time for which he was sentenced, he may be held until he has completed the full term for which he was sentenced. The statute (2 G. & H., §§ 55, 56, p. 454) was not intended to change the common-law rule in regard to the capture of escaped felons, but only to authorize an additional holding after the sentence has been fulfilled, until a prosecution can be instituted for the escape." "It did not require legislation to authorize the recapture of an escaped prisoner, and his confinement until he has served out the full continuous term of his sentence."

Section 56 of the Indiana statute above referred to is almost precisely like our § 191, Gen. Stat. 358, already referred to. Said § 191 has reference to punishment for escapes, and was not intended to abrogate or annul previously-existing sentences. It means that if a convict escape, he may at any time afterward, however long or however short, be rearrested and imprisoned, and that he shall remain so imprisoned, even after the term for which he was originally sentenced has in fact and in law expired, until he can be prosecuted for the escape, or until such prosecution is abandoned. The section we think does not affect the law of this case in the least. In *Dolan's Case* it was held:

"The sentence of a convict to imprisonment for a term expressed only by designating the length of time, is to be satisfied only by his actual imprisonment for that length of time, unless remitted by legal authority; and if a sentence is limited to take effect upon the expiration of a previous sentence, its period will not begin to run until the first sentence has so been fully performed or legally discharged. If a prisoner under sentence to be imprisoned for a term expressed only by the length of time, escapes during the term, the period during which he remains at large does not abridge the

Hollon v. Hopkins.

period of imprisonment which remains for him to suffer before fully performing the sentence."

In the present case, the court sentenced Hollon to be imprisoned in the penitentiary "for the period of three years," less five days. The court also designated the time when such "period" should commence. Now according to the authorities, the amount of the imprisonment prescribed by the court is material, and inheres in the sentence; but the time when the imprisonment should commence is comparatively immaterial, and technically does not belong to the sentence. It is so immaterial that courts are not bound to hold that the imprisonment actually or in law did commence at the time when the court said it should commence, if in fact and by the convict's own wrong it never did commence. It would probably be the safer practice in cases of this kind, where the convict escapes and remains absent until the whole of the time as fixed by the court for his imprisonment or for the execution of his sentence has elapsed, to take such convict again before the court that sentenced him, so that the court might resentence him, or in other words, "order the execution of its former judgment." *State v. McClure,* Phillips (N. C.), 491, 492; *State v. Wamire,* 16 Ind. 357; *Ex parte Isaiah Bell,* Supreme Court of Mississippi, 1879. But still we do not think that such practice is necessary. The records of the court show that the convict was sentenced, and the records of the penitentiary show that the sentence has not been executed. Nothing is therefore left to be shown except the identity of the prisoner, and the reasons for the failure to imprison him at the proper time. If in fact the prisoner is not the convict, or if in fact he has been pardoned or his sentence revoked, these things may be shown as well on proceedings in *habeas corpus* as on proceedings in the court where the convict was originally sentenced. We think that Hollon's sentence is still in force—not executed, not revoked, not annulled, nor exhausted by lapse of time.

The return of the said Henry Hopkins to said writ of *habeas corpus* is therefore considered sufficient.

All the Justices concurring.